UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

UNITED STATES OF AMERICA

v.

EARL A. ROBERTSON,

Defendant.

Criminal Action No. 3:11–CR–98

## MEMORANDUM OPINION

THIS MATTER is before the Court on the United States' Motion to Correct Record (ECF No. 9), Defendant Earl A. Robertson's motion to suppress evidence obtained pursuant to a search warrant (ECF No. 12), and a motion for an evidentiary hearing also filed by the Defendant (ECF No. 19). The Defendant, who is charged with possession with intent to distribute cocaine base, challenges the validity of the search warrant based on both the magistrate's finding of probable cause and the veracity of the warrant affidavit. Having held an evidentiary hearing, the Court finds that there were sufficient facts to the support the magistrate's finding of probable cause, that the Defendant has failed to show that the search warrant affidavit contained an intentionally or recklessly false statement, or that the affiant omitted a material fact with the intention of misleading the magistrate. For the reasons stated from the bench and below, the Court will grant the United States' motion to correct the record, will grant the Defendant's motion for an evidentiary hearing, and will deny the Defendant's motion to suppress.

## I.   BACKGROUND

On December 18, 2009, Investigator Ian McDonald of the Amelia County Sheriff's Office applied for a warrant to search the residence at ***** Thompkins Lane in Amelia ("the residence"). In his affidavit, Investigator McDonald stated that the following material facts constituted probable cause for the search:

> On 12/18/09 I observed a gold in color Volvo sedan with Virginia registration ***-**** coming from ***** Thompkins Ln. I conducted a traffic stop due to the vehicle swerving on the road way. I made contact with the driver identified as Elihu Booker. Upon speaking with Mr. Booker he advised me that he has gone to ***** Thompkins Ln for the past several years to purchase crack cocaine from the home owner. On today[']s date he advised that he went there and purchased $15.00 worth of crack. He also advised that the previous time was late last week and he purchased $40.00 worth of crack cocaine. Mr. Booker also advised that if he was to go back today that the home owner would still have more crack to sell.

(Gov't's Ex. 1, at 2). Investigator McDonald also provided the following as facts supporting Booker's credibility and the reliability of his knowledge:

> Elihu Booker was stopped for a traffic infraction and was seen coming from ***** Thompkins Ln. Approximately 3 weeks ago Sgt. Redman and Deputy Pugh of Amelia Sheriff's Office were at the same location and observed suspected marijuana and paraphernalia along with several weapons. Mr. Booker advised that he purchased $15.00 worth of crack cocaine from that resident on today[']s date and that he has purchased narcotics from that same location in the past, and stated that if he returned he would be able to purchase more.

*Id.* The magistrate issued the search warrant. Investigator McDonald and other state law enforcement personnel executed the search warrant at ***** Thompkins Lane on December 18, 2009. They recovered crack cocaine, drug paraphernalia, cash, and other evidence from the room where Defendant Earl A. Robertson was sleeping. He was arrested that day.

The Defendant's case was eventually transferred to federal court, and he was arraigned in federal court on April 12, 2011. Later that day, the United States filed a motion to correct the record stating that Investigator McDonald's search warrant affidavit included a false statement regarding who actually purchased crack cocaine from the residence in December 2009 (ECF No. 9). Relying on the affidavit, the Government had conveyed this false information to two federal magistrate judges. The Defendant did not respond to the motion.

On May 10, 2011, the Defendant filed a motion to suppress arguing that Investigator McDonald's affidavit was insufficient to show probable cause because it lacked information on the informant's reliability and basis of knowledge. On June 16, five days prior to the scheduled hearing on the motion to suppress, the Defendant filed a motion for an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). In his memorandum, the Defendant argued that the affidavit used to obtain the search warrant was based on false statements and material omissions and, therefore, the Court should void it.[1]  The Court held a hearing on these motions on July 15, 2011.

## II.  MOTION FOR EVIDENTIARY HEARING

### A.  Legal Standard

In *Franks v. Delaware*, the Supreme Court acknowledged that in some limited situations, defendants should be able to challenge the veracity of affidavits prior to trial.

---

[1]  The Court notes that neither of the Defendant's motions were timely filed under Local Criminal Rule 12(A), which requires parties to file motions to suppress and motions challenging warrants within eleven days from the date of the defendant's arraignment or "such other time as may be fixed by the Court." Because the Government did not object to the lack of timeliness and because the Defendant stated that the case "unraveled" over time (Hr'g Tr. 7), the Court has permitted the Defendant to pursue the untimely motions on their merits.

438 U.S. at 155-56. A defendant has a high burden to meet to obtain a *Franks* hearing. First,

he must make "a substantial preliminary showing that a false statement knowingly and

intentionally, or with reckless disregard for the truth, was included by the affiant in the

warrant affidavit." *Id.* He must also show that "the allegedly false statement is necessary to

the finding of probable cause." *Id.* at 156.

Facts omitted from affidavits may also warrant an evidentiary hearing. An affidavit

does not need to include "'every piece of information gathered in the course of an

investigation,'" however. *United States v. Tate*, 524 F.3d 449, 455 (4th Cir. 2008) (quoting

*United States v. Colkley*, 899 F.2d 297, 300 (4th Cir. 1990)). Thus, "merely showing an

intentional omission of a fact from a warrant affidavit does not fulfill *Franks'*

requirements." *Id.* To succeed on the argument that factual omissions warrant an

evidentiary hearing, a defendant must

> make a substantial preliminary showing that [the affiant]
> omitted material facts that when included would defeat a
> probable cause showing—i.e., the omission would have to be
> necessary to the finding of probable cause—and that the
> omission was designed to mislead or was made with reckless
> disregard of whether it would mislead.

*Id.* (internal quotation marks and citations omitted).

To obtain an evidentiary hearing, a defendant must make challenges that are more

than conclusory. *Franks*, 438 U.S. at 171. In a proper motion for a *Franks* hearing, "[t]here

must be allegations of deliberate falsehood or of reckless disregard for the truth, and those

allegations must be accompanied by an offer of proof." *Id.*; *accord Tate*, 524 F.3d at 454.

## B. **Parties' Arguments**

### 1. **False Statements**

The Defendant argues that Investigator McDonald's search warrant affidavit contained three false statements: (1) Deputy Redman and Investigator Pugh observed marijuana, drug paraphernalia, or weapons in the residence on a prior occasion; (2) Booker told Investigator McDonald that he purchased crack cocaine at the residence; and (3) Booker told McDonald that the homeowner would have more crack cocaine to sell if he went back. The Defendant argues that the first allegedly false statement was necessary for the magistrate's probable cause finding because it corroborated Booker's statements and went "directly to the heart of what [was] being presented to the magistrate that evening." (Hr'g Tr. 23-24). Because Investigator McDonald had no firsthand knowledge of the incident in which he believed other law enforcement observed drugs and weapons at the residence, he was obligated to ensure the accuracy of his statement before including in the affidavit, according to the Defendant. The Defendant argues that because Investigator McDonald failed to do so, his inclusion of the statement in the affidavit was reckless. The Defendant also contends that the false statements related to Booker's purchasing drugs from the residence and his statement that there would be more drugs available for purchase if he went back were necessary for the magistrate's probable cause determination because they provided the only indication that drugs were currently in the residence. The Defendant further argues that because Investigator McDonald fabricated the statements, he necessarily provided them knowing they were false.

The Government argues that the Defendant failed to meet either prong of the *Franks* inquiry for the allegedly false statements. As an initial matter, the Government concedes that the statement regarding the observations of Deputy Redman and Investigator Pugh was "inaccurate." (Hr'g Tr. 22). The Government asserts, however, that the Defendant made

no showing that the statement was intentionally or recklessly false. The Government next argues that the statements regarding Booker's involvement and observations were not intentionally or recklessly false because Booker never told Investigator McDonald that a third party conducted the hand-to-hand transaction. Rather, Investigator McDonald's affidavit recounted the events as Booker communicated to him on December 18, 2009. The United States further argues that none of the three allegedly false statements were material to the magistrate's finding of probable cause because a statement in which the alleged falsities were corrected would still provide the magistrate sufficient facts to find that probable cause existed.

### 2. Material Omissions

The Defendant next contends that Investigator McDonald's affidavit omitted the following material facts: (1) Investigator McDonald first saw Booker's car traveling on a driveway that services three homes, not just ***** Thompkins Lane; (2) he observed the vehicle turning into a driveway at a residence on Richmond Road after it left the driveway off of Thompkins Lane; (3) he lost sight of the vehicle after it turned into the driveway off of Richmond Road; and (4) he stopped the vehicle due to the driver's swerving several miles after the vehicle left the driveway of another residence. The Defendant argues that Investigator McDonald "penned [the material facts paragraph of the affidavit] in such a way to make it look very clean and very simple." (Hr'g Tr. 126). First, the Defendant asserts that Investigator McDonald omitted any statement regarding Booker's intoxication and failed field sobriety tests because those facts would undermine Booker's credibility. Similarly, the Defendant suggests that to mislead the magistrate into thinking this was a simple traffic stop with a clear connection to drug activity, Investigator McDonald omitted details about

the number of houses serviced by the driveway off of Thompkins Lane and about what occurred after the vehicle exited that driveway. According to the Defendant, when combined with the false statements, the multiple omissions are evidence of the type of governmental "gamesmanship" that the Fourth Circuit found to constitute reckless disregard for the truth in *In re Search Warrants Served on Home Health and Hospice Care, Inc.*, 121 F.3d 700 (4th Cir. 1997) (unpublished table opinion).

The Government argues that the Defendant has failed to show that the alleged intentional omissions are material because if any or all of these omissions were included in the affidavit, sufficient facts would still exist for the magistrate to find probable cause. For example, the Government contends, if Investigator McDonald had stated that Booker drove someone else to the residence to buy crack cocaine, that the other person went into the residence to purchase the crack cocaine, and that Booker had done that in the past, the magistrate would have had sufficient facts to find that probable cause existed.

## C.  Discussion

At the hearing on this motion, the Court found that the Defendant made the requisite preliminary showing that there was sufficient basis to challenge the affidavit. First, the Defendant showed that the allegedly false statements were material to the probable cause determination. The admittedly false statement regarding Deputy Redman's and Investigator Pugh's observations corroborated Booker's information and likely reassured the magistrate that law enforcement had additional knowledge of drug activity at the residence. Similarly, the allegedly false statements related to Booker's involvement and observations were the primary justification for the warrant request. Next, the Defendant made a sufficient *preliminary* showing that the inclusion of one admittedly false

statement and two allegedly false statements critical to the probable cause determination—along with the omissions of facts that may have undermined Booker's credibility and Investigator McDonald's ability to connect Booker to drug activity at ***** Thompkins Lane—raise the serious question of whether Investigator McDonald crafted the affidavit with at least reckless disregard for the truth to present the most compelling story to the magistrate. Accordingly, the Court GRANTED the Defendant's motion for an evidentiary hearing.

### III. <u>FINDINGS OF FACT</u>

During the July 15, 2011, evidentiary hearing, the Defendant offered the testimony of Elihu Booker, Investigator Gary Pugh and Deputy Abraham Redman of the Amelia County Sheriff's Office, and Special Agent David Allen of the Bureau of Alcohol, Tobacco, Firearms, and Explosives. The Defendant also introduced photographs of the property surrounding the Thompkins Lane residence. The Government offered the testimony of Investigator Ian McDonald of the Amelia County Sheriff's Office, the search warrant affidavit, photos and diagrams of various areas of interest, Booker's arrest report, Special Agent Allen's summary of his contacts, and Investigator McDonald's incident report. From that evidence, the Court makes the following findings of fact.

### A.  <u>Prior Events</u>

In August 2005, Investigator Ian McDonald of the Amelia County Sheriff's Office conducted a traffic stop of a gold Volvo sedan that had a hood of a different color and observed what appeared to be crack cocaine and drug paraphernalia in the car. He arrested the driver, Elihu Booker, who admitted that the crack cocaine was his and that he intended

to smoke it with two women who were in the car with him in exchange for sex. At that time, Booker informed Investigator McDonald that Booker's wife, who was not present, was an employee of the Amelia County court system. Between 2005 and 2009, Investigator McDonald occasionally saw Booker driving the same vehicle in Amelia.

In late November or early December 2009, Investigator Gary Pugh, Jr., and Deputy Abraham Redman, both of the Amelia County Sheriff's Office, and other officers assisted state police officers executing arrest warrants at the Thompkins Lane residence. Twin brothers related to the Defendant's father were wanted for violent offenses. Both Deputy Redman and Investigator Pugh entered the residence just inside the front door and stood in the living room. Investigator Pugh advanced into the living room two to three feet from the front door. Deputy Redman, who was behind him, went only as far as one to two feet from the front door. Neither officer saw any drugs or weapons.

Other police offers at the scene discussed seeing a couple guns and a small amount of marijuana in the residence. Because they knew that convicted felons lived there, the other officers questioned why no one confiscated the guns. Neither Investigator Pugh nor Deputy Redman saw drugs or guns or was a direct participant in the conversation about the weapons. Both officers later discussed this experience assisting state police with Investigator McDonald, and both mentioned the other officers' conversation about the weapons. Neither officer remembers mentioning the marijuana to Investigator McDonald.

**B.  Traffic Stop**

At approximately two o'clock on the morning of December 18, 2009, Investigator McDonald was driving on Thompkins Lane and passed a vehicle traveling on a driveway leading to several residences. He believed that this vehicle was the same one Booker drove

9

during the 2005 traffic stop and arrest. Given the location of the car, which was approximately halfway down the driveway and heading toward Thompkins Lane, Investigator McDonald concluded it was coming from the residence at ***** Thompkins Lane.

After the vehicle exited the driveway and turned onto Thompkins Lane, Investigator McDonald, who was in an unmarked car and traveling in the opposite direction, made a U-turn to follow it. From his vantage point, Investigator McDonald was able to observe someone sitting in the driver's seat, but he was not able to determine whether there were passengers in the vehicle. He followed the vehicle as it turned right onto Richmond Road but drove past it as it pulled into a driveway at **** Richmond Road. As he traveled past the driveway where the car was stopped, Investigator McDonald was not able to see what was occurring. Investigator McDonald lost sight of the vehicle for no more than one minute. He made a U-turn further down Richmond Road and again followed the car, which had exited the driveway and was heading back toward Thompkins Lane.

Investigator McDonald followed the car for approximately three miles. After turning onto Namozine Road, the driver swerved over the double yellow lines several times and drove erratically. Investigator McDonald turned on his emergency lights and stopped the car on Cralles Road. He immediately recognized the driver of the vehicle as Elihu Booker. No one else was in the vehicle. Investigator McDonald, who noticed that Booker had specks of a "white crumbly substance" on the front of his shirt (Hr'g Tr. 74), reached through the window, collected some of the substance, and field tested it. The field test revealed the substance to contain cocaine.

When Booker exited the vehicle, Investigator McDonald detected the odor of alcohol and observed that Booker's eyes were bloodshot and glassy. Investigator McDonald administered field sobriety tests, which Booker failed. After obtaining Booker's consent to search his vehicle, Investigator McDonald found additional white specks, which he packaged. He then placed Booker in custody.

At the scene, Booker asked Investigator McDonald to give him a break. At headquarters, Booker advised Investigator McDonald that he had purchased the crack cocaine found on his shirt from an older man at ***** Thompkins Lane. He also told Investigator McDonald that he had been there several times and that if he went back, there would be more crack cocaine for purchase.

## C. **Search Warrant and Arrest**

Investigator McDonald obtained a search warrant based on Booker's information and his own observations and knowledge. Booker, who later discovered that Investigator McDonald named him in the affidavit, was "a little upset" that his name was discussed in the proceedings against the residents of ***** Thompkins Lane. (Hr'g Tr. 42).

Investigator McDonald and other state law enforcement personnel executed the search warrant on ***** Thompkins Lane at approximately 5:00 a.m. on December 18, 2009. Based on evidence recovered at the residence, officers took the Defendant and his father, Earl Hardy, into custody that day.

Investigator McDonald placed the Defendant's stepmother, Wilma Hardy, into custody on December 28, ten days after executing the search warrant. At that time, she informed him that the morning the search warrant was executed, a woman named Sherry Worsham was the last person who purchased drugs at the residence. She also told him that

Booker never came into the house. Investigator McDonald attempted to locate Worsham but was unable to do so because she moved frequently. He was not able to confirm whether Worsham ever went into the residence to purchase drugs.

Investigator McDonald included Wilma Hardy's statement about Worsham in his incident report detailing the execution of the search warrant and the interviews and arrests that followed. He did not include Hardy's statement that Booker never entered the house. Investigator McDonald did not inform the prosecuting attorney that Worsham may have been the last customer at the residence or that Wilma Hardy said Booker had never been in the home. He also did not provide this information in the state court preliminary hearing, during which the judge relied on the December 18 affidavit and search warrant.

**D.  Federal Prosecution**

The case against Robertson first came to the attention of the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) in February 2010. In early March 2011, ATF Special Agent Daniel Allen obtained a warrant for Robertson's arrest from United States Magistrate Judge Dennis W. Dohnal. In his affidavit, Special Agent Allen summarized the probable cause evidence, including Booker's statements to Investigator McDonald, and relied on Investigator McDonald's statements and representations to swear out an affidavit. At a March 18 detention and probable cause hearing before United States Magistrate Judge M. Hannah Lauck, Special Agent Allen relied on Investigator McDonald's reports from December 2009 and repeated Booker's statements to Investigator McDonald.

On March 29, Special Agent Allen served Booker with a subpoena to testify before the grand jury on April 5. When they met, Booker acknowledged that he was present at the residence when crack cocaine was purchased in December 2009 but claimed that he was

not the person who conducted the hand-to-hand transaction. He also stated that he never told Investigator McDonald that he was the person who had purchased the crack cocaine. When Special Agent Allen showed him pictures of Robertson and Earl and Wilma Hardy, Booker did not recognize Robertson or Wilma Hardy. While Booker recognized Earl Hardy, he maintained that he never purchased crack cocaine from him. Despite Special Agent Allen's repeated requests for the name of the person who purchased the crack cocaine and his assurances that Booker was not the focus of an investigation, Booker would not identify the person whom he claimed conducted the hand-to-hand transaction at the residence.

On April 5, the day of Booker's scheduled grand jury testimony, Assistant United States Attorney (AUSA) David Maguire and Special Agent Allen conducted a pre-interview with Booker. He again informed them that he had never been inside the residence at ***** Thompkins Lane and maintained that he never told Investigator McDonald that he purchased drugs there on December 18, 2009. He now claimed that a woman named Sherry Worsham, not he, conducted the hand-to-hand transaction. According to Booker, he and Worhsham had a nonromantic, physically intimate relationship, and she purchased the drugs for both of them to use. Booker told Special Agent Allen that he had driven Worsham to the residence to buy crack cocaine ten to twenty times in the previous year and that he only went to that residence so that Worsham could buy crack cocaine.[2]  Special Agent Allen and AUSA Maguire terminated the interview with Booker and arranged for him to obtain court-appointed counsel.

---

[2]  Special Agent Allen testified, consistent with his report, that Booker admitted driving Worsham to the residence to purchase crack cocaine ten to twenty times in the previous year. Booker testified that this occurred five or six times.

Special Agent Allen spoke with Investigator McDonald approximately twenty to thirty times about this case prior to April 2011; however, he did not learn of any connection between Booker and Worsham until the April 5, 2011, pre-interview. That day, Special Agent Allen spoke with Investigator McDonald, who maintained that Booker had always stated that he purchased crack cocaine on the night in question. Investigator McDonald also told Special Agent Allen that Booker never asserted that Worsham or anyone else conducted the hand-to-hand transaction.

## IV. <u>MOTION TO SUPPRESS</u>

### A. <u>Legal Standards</u>

The Fourth Amendment safeguards the "right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." U.S. Const. amend. IV. A search is *per se* unreasonable under the Fourth Amendment—with few exceptions—if it is not conducted pursuant to a valid warrant. *Katz v. United States*, 389 U.S. 347, 357 (1967).

The Defendant first challenges the validity of the warrant based on alleged false statements and material omissions. To prevail on his request that the Court void the search warrant and exclude evidence on this basis, the Defendant must show by a preponderance of the evidence that Investigator McDonald made deliberately or recklessly false statements, *Franks*, 438 U.S. at 156, or that he omitted material facts with an intent to mislead the magistrate. *Colkley,* 899 F.2d at 301.

The Defendant next challenges the validity of the warrant based on a lack of probable cause. Probable cause is determined by the totality of the circumstances, as seen

from the point of view of "a man of reasonable prudence." *Ornelas v. United States*, 517 U.S. 690, 696 (1996). The existence of probable cause means there is a "fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). When information provided by an informant serves as the basis for probable cause, the totality-of-the-circumstances test includes factors such as the informant's credibility and the basis of the informant's knowledge. *Beuns v. Johnson*, 462 U.S. 213, 233 (1983). In reviewing a magistrate's determination of probable cause, the court must ascertain whether there was a substantial basis for concluding that probable cause existed. *Gates*, 462 U.S. at 238–39. In doing so, the courts should give the magistrate's determination "great deference." *Id.* at 236.

Evidence seized pursuant to a facially invalid search warrant may be admitted under a good faith exception to the exclusionary rule. *United States v. Leon*, 468 U.S. 897, 923 (1984). Even with the good faith exception, however, suppression is appropriate in the following four situations:

> first, when the warrant is based on an affidavit containing knowing or reckless falsity; second, when the magistrate has simply acted as a 'rubber stamp' for the police; third, when the affidavit does not provide the magistrate with a substantial basis for determining the existence of probable cause; and finally, when the warrant is so facially deficient that an officer could not reasonably rely on it.

*United States v. Wilhelm*, 80 F.3d 116, 121 (4th Cir. 1986) (internal quotation marks omitted) (citing *Leon*, 468 U.S. at 923).

**B. Discussion**

**1. False Statements and Material Omissions**

The Court concludes that given an opportunity to present additional evidence, the Defendant failed to meet his burden of showing by a preponderance of the evidence that Investigator McDonald made deliberately or recklessly false statements necessary to the finding of probable cause or that he omitted facts material to the probable cause determination with reckless disregard of whether they would mislead the magistrate.

Because the Government conceded that the statement regarding other law enforcement officers' observations of weapons, drugs, and paraphernalia at the residence was false and because the Court found that the statement was material to the probable cause determination, the sole issue for the evidentiary hearing related to that statement was whether Investigator McDonald included that false statement either knowingly and intentionally or with reckless disregard for the truth. The Court finds that the Defendant did not meet his burden of proving that allegation by a preponderance of the evidence.

Investigator McDonald testified that he had conversations with both Investigator Pugh and Deputy Redman about drugs and guns seen at the Thompkins Lane residence. He was under the impression that the arrest warrants were for drug offenses, that both officers had entered the residence, and that they had both seen guns. He testified that he was unable to recall which officer told him about the drugs. Investigator McDonald's understanding of the earlier events at the residence was clearly incorrect. He was wrong about the nature of offenses alleged in the arrest warrants, whether Investigator Pugh and Deputy Redman entered the residence, and what they saw, if anything. The fact that he included the false statement in the search warrant affidavit is not sufficient to justify voiding the warrant, however. The Defendant presented no evidence that Investigator McDonald knew that the statement was false when he included it in the search warrant

affidavit or that his actions rise to the level of reckless disregard for the truth. Rather, the evidence showed that the statement was based on Investigator McDonald's misunderstanding and less than ideal police work, as the Government concedes. That is not sufficient to void a warrant. *See Franks*, 438 U.S. at 171.

The Defendant relies almost entirely on Elihu Booker's testimony to meet his burden of proving that Investigator McDonald knowingly or recklessly lied about Booker's involvement in the December 2009 drug transaction. Because Investigator McDonald's and Booker's accounts of what information Booker conveyed on December 18, 2009, are starkly different and because the Defendant offered no other evidence to corroborate Booker's version, the Court must ultimately determine which witness was more credible and believable. Comparing the demeanor and testimony of the two, the Court easily resolves the dispute in the United States' favor. First, Booker's demeanor as a witness was poor. He was defensive, hesitant to respond to simple questions, and evasive on cross-examination. Additionally, Booker admitted to being a long-term crack cocaine user and addict, he was under the influence of crack cocaine and alcohol when Investigator McDonald pulled him over that early morning, and he tried to talk his way out of the trouble he would be in if he were arrested for crack cocaine possession. Furthermore, even on the witness stand he spoke about the 2009 crack purchase intimately: when AUSA Maguire asked Booker how many drugs he used the night in question, Booker responded, "Just smoked that $15 I bought." (Hr'g Tr. 39). Finally, as Special Agent Allen testified, Booker refused to name Worsham as the party who conducted the hand-to-hand transaction until the day of his grand jury testimony in April 2011. If, as Booker alleged, he identified Worsham to

17

Investigator McDonald in December 2009, he would have no reason to avoid identifying her to Special Agent Allen.

In contrast, Investigator McDonald's demeanor as a witness was good. He was straightforward about his misunderstanding of Investigator Pugh's and Deputy Redman's observations and about his work in this matter after learning about Worsham from Wilma Hardy.

As stated at the hearing on this matter, Booker was simply not credible as a witness, and by relying almost entirely on him, the Defendant has failed to meet his burden to show that Investigator McDonald fabricated Booker's involvement. While Investigator McDonald should have done more to inform state and federal prosecutors about the possibility that Worsham conducted the hand-to-hand transaction, his failure to do so does not warrant invalidating a warrant he obtained ten days *before* ever hearing Worsham's name.

Finally, the omissions presented by the Defendant are not sufficient to defeat probable cause and, thus, are not material. The information that Booker was driving erratically and had just purchased crack cocaine was sufficient to prompt the magistrate to request more information if there were any doubt about his credibility. Furthermore, although Investigator McDonald was not required to include every detail of his investigation in the affidavit, if he had included the turn-by-turn details of his traffic stop, they would not have undermined the magistrate's probable cause determination. Additionally, while McDonald did not specify that the driveway he initially saw Booker's car on serviced multiple homes, Booker identified the specific residence where he purchased crack cocaine when asked by Investigator McDonald. As to the Defendant's

argument that Investigator failed to inform the magistrate that he had lost sight of Booker's vehicle when it pulled into the driveway off of Richmond Road, that brief interruption in following Booker is insufficient to defeat probable cause. Finally, the Defendant failed to show that Investigator McDonald's omission of facts was driven by a desire to mislead the magistrate.

## 2. Probable Cause

Finally, the Defendant asserts that there was no probable cause to search the Defendant's residence because the information provided to the magistrate issuing the search warrant lacked details on the informant's reliability and basis of knowledge. According to the Defendant, "Booker was nothing more than an unknown drug user who had just gotten arrested for being under the influence of one or more substances while driving his vehicle." (Mot. Suppress, ECF No. 12, at 5). The Defendant asks the Court to suppress all evidence seized and statements made as a result of the search because there is "no reliable information on Booker and no meaningful corroboration of the information he gave Officer McDonald." *Id.* at 6.

In *Gates*, the Supreme Court held that an informant's veracity or reliability and basis of knowledge "should be understood simply as closely intertwined issues that may usefully illuminate the commonsense, practical question whether there is 'probable cause' to believe that contraband or evidence is located in a particular place." 462 U.S. at 230. Thus, the Defendant's complete reliance on evidence of Booker's reliability and basis of knowledge fails to properly consider the totality of the circumstances. Given that the Fourth Circuit distinguishes between face-to-face informants and anonymous tipsters, a consideration of the totality of the circumstances includes acknowledging that Booker was

known to Investigator McDonald and provided the information to him in a face-to-face interaction,. *See, e.g.*, *United States v. DeQuasie*, 373 F.3d 509, 523 (4th Cir. 2004); *United States v. Christmas*, 222 F.3d 141, 144 (4th Cir. 2000). Additionally, Booker's interest in obtaining leniency created a strong motive for him to supply accurate information. *See United States v. Miller*, 925 F.2d 695, 697 (4th Cir. 1991).

Although they no longer comprise the entirety of a probable cause inquiry, an informant's basis of knowledge and reliability are still key factors for consideration in the totality-of-the-circumstances test. In this case, the informant's basis of knowledge was his firsthand information related to a $15 crack purchase that evening and a history of drug purchases from that location. This was all set forth in the affidavit. There were also numerous indicia of reliability, including Investigator McDonald's observations of Booker's car leaving the location, a statement that law enforcement officers had previously observed of drugs and weapons at the location, and the fact that Booker's admission was against his penal interest. *See, e.g., United States v. Harris*, 403 U.S. 573, 583 (1971). These indicia were also all set forth in the affidavit.

For these reasons, it appears that there was sufficient evidence in the record for the magistrate judge to conclude that probable cause existed and to issue the search warrant. That Booker later admitted that his information was partially untrue does not affect the existence of probable cause or the propriety of the search warrant at the time the magistrate judge issued it. Accordingly, the Court DENIES the motion to suppress.

Even if the Court had found that the search warrant were facially invalid, the Court would deny the Defendant's request to exclude evidence because the Defendant has failed to show that the good faith exception does not apply. As discussed in detail above, the

Defendant has not shown that Investigator McDonald's affidavit contained knowing or reckless falsity or that the affidavit failed to provide the magistrate with a substantial basis to make the probable cause determination. Furthermore, there is no evidence that the magistrate simply acted as a rubber stamp or that the warrant itself was so facially deficient that officers should not have relied on it.

## V.  <u>CONCLUSION</u>

For these reasons and those stated from the bench, the Court GRANTS the Motion to Correct Record, GRANTS the motion for an evidentiary hearing, and DENIES the motion to suppress.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

An appropriate Order shall issue.

_____/s/_____
James R. Spencer
Chief United States District Judge

ENTERED this ___15th___ day of August 2011.